# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | \* | **CRIMINAL NO. 04-30059-01** |
| **VERSUS** | \* | **JUDGE JAMES** |
| **LEE E. UNDERWOOD, JR.** | \* | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by defendant Lee E. Underwood, Jr. (Doc. #116). Underwood's sole contention is that his due process rights were violated because the undersigned magistrate judge presided over his change of plea hearing. For the reasons given below, it is recommended that Underwood's motion be **DENIED**.

## BACKGROUND

In March 2005, Underwood pled guilty to Count One of a five-count indictment. (Docs. #27, #60). The undersigned magistrate judge presided over Underwood's plea proceeding and conducted the Rule 11 allocution. Afterward, the undersigned issued a report and recommendation recommending that the district court accept Underwood's plea. (Doc. #61). Underwood filed no objection to the report and recommendation. (Doc. #67). After considering the report and recommendation, the district court accepted the guilty plea and adjudged Underwood guilty. *Id.*

During the plea proceedings on March 25, 2005, the undersigned informed Underwood that she was a magistrate judge and that his guilty plea was subject to the district judge's final approval. (Doc. #65, p.21). Underwood did not expressly consent to having a magistrate judge preside, nor did he object to the district judge's absence. *See id.* Underwood was represented by counsel at the hearing. *Id.*

After the district court accepted his plea and sentenced him, Underwood, unhappy with the sentence imposed, appealed his sentence to the United States Court of Appeals for the Fifth Circuit. The court affirmed. (Doc. #109). Underwood then filed a petition for writ of certiorari, which the Supreme Court of the United States denied. 127 S. Ct. 1010 (2007).

Underwood filed the instant motion on January 8, 2008. Underwood had never previously raised the issue of the authority of the magistrate judge to preside over his plea proceeding, and even now points to no defect in the proceedings so far as the knowing and voluntary nature of the plea was concerned under Rule 11. This court has provided the parties the opportunity to submit briefs and to present evidence pertaining to Underwood's claim. (Docs. #121, #124).

## LAW AND ANALYSIS

"Federal magistrate judges are not empowered to exercise judicial functions under Article III of the Constitution. Instead, their authority is that conferred by Congress under the Magistrates Act, 28 U.S.C. § 636" ("the Act"). *United States v. Torres*, 258 F.3d 791, 794 (8th Cir. 2001). "Determining whether a judicial duty is properly delegable to a magistrate requires a two-step analysis." *United States v. Dees*, 125 F.3d 261, 264 (5th Cir. 1997). The first consideration is whether the Act authorizes magistrate judges to assume the duty at issue. *Id.* To answer this question, courts must determine "whether Congress, in passing [the Act], intended for [magistrate judges] to perform the duty." *Id.* The second consideration is "whether the delegation of the duty to a magistrate judge offends the principles of Article III."[1] *Id.*

---

[1] In his § 2255 petition, Underwood asserts a violation of his due process rights. The Supreme Court and various circuit courts have indicated only that defendants may have rights under Article III of the Constitution that could potentially be implicated in these circumstances. *See, e.g.*, *Peretz v. United States*, 501 U.S. 923 (1991). Underwood's failure to argue a violation

2

## I. Statutory Authorization

The statutory authority of magistrate judges is set out in 28 U.S.C. § 636. The Act specifically authorizes the delegation of certain actions:

(b)(1) Notwithstanding any provision of law to the contrary –

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or quash an indictment or information made by the defendant, [or] to suppress evidence in a criminal case . . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) . . . .

(2) . . . A judge may designate a magistrate [magistrate judge] to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

§ 636(b).

The Act "does not expressly authorize judges to conduct plea proceedings." *Dees*, 125 F.3d at 264 (citing § 636(b)(1)(A)-(B)). The Act does contain a residuary clause, however, which states that "[a] magistrate . . . may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." § 636(b)(3).

---

of his Article III rights does not allow for summary denial of his claim, however, because the question of magistrate judges' authority to preside over the plea proceedings implicates questions of jurisdiction. *United States v. Dees*, 125 F.3d 125, 263 (5th Cir. 1997). "If the magistrate judge did not have authority to entertain [Underwood's] plea, then neither [his] plea, [his] waiver of appeal, nor [his] sentence are valid." *Id.* Because this court has an independent duty to determine whether jurisdiction lies in the case, the court is obliged to consider the matter despite the infirmities in the defendant's argument.

3

A.

In *Dees*, the Fifth Circuit held "the taking of a guilty plea is a permissible 'additional duty' for a magistrate judge under § 636(b)(3)." 125 F.3d at 266. To reach this conclusion, the court employed the standard set forth by the Supreme Court: "a magisterial duty is a proper 'additional duty' under the clause if it bears some relationship to the duties that the Act expressly assigns to magistrate judges." *Id.* at 264-65; *see also Peretz v. United States*, 501 U.S. 923, 930-31 (1991); *Gomez v. United States*, 490 U.S. 858, 864 (1989). Employing that standard, the *Dees* court held that presiding over a plea proceeding is "substantially similar" to conducting an evidentiary hearing for the purpose of resolving whether a guilty plea was knowingly and voluntarily entered. *Id.* at 265. Because the Fifth Circuit had already held that magistrate judges are expressly authorized to conduct such hearings, *United States v. Rojas*, 898 F.2d 40 (5th Cir. 1990), *Dees* held that presiding over plea proceedings is a permissible "additional duty" under the Act. 125 F.3d at 266.

This holding does not end the inquiry, however. The Act expressly conditions its authorization to perform certain duties based on the consent of the parties. *See, e.g.*, § 636(b)(2) ("A judge may designate a . . . magistrate judge . . . to serve as a special master in any civil case, upon consent of the parties"). In *Dees*, unlike in this case, the defendant consented to the magistrate judge presiding over the plea hearing. Thus, if presiding over plea proceedings is a duty for which the Act requires consent, the undersigned magistrate judge lacked statutory authority to preside over the plea proceedings.

B.

The issue of whether the Act requires express consent for magistrate judges to preside over plea proceedings is one of first impression in this circuit. This court concludes that the Act

4

is best interpreted as authorizing magistrate judges to preside over plea proceedings without consent if there is no objection. This interpretation is reached by employing the analysis used in *Peretz*, in which the Supreme Court held that the Act authorizes magistrate judges to conduct felony *voir dire* with the defendant's consent:

> Carefully reviewing the duties that magistrates were expressly authorized to perform, we focused on the fact that *those specified duties that were comparable to jury selection in a felony trial could be performed only with the consent of the litigants*. We noted that, in 1968 when magistrates were empowered to try "minor offenses," the exercise of that jurisdiction in any specific case was conditioned upon the defendant's express written consent. Similarly, the 1976 amendment provided that a magistrate could be designated as a special master in any civil case but only with the consent of the parties. And in 1979, when Congress enlarged the magistrate's criminal jurisdiction to encompass all misdemeanors, the exercise of that authority was subject to the defendant's consent.
>
> . . .
>
> . . . *the duties that a magistrate may perform over the parties' objections are generally subsidiary matters not comparable to supervision of jury selection*. However, with the parties' consent, a district judge may delegate to a magistrate supervision of entire civil and misdemeanor trials. These duties are comparable in responsibility and importance to presiding over voir dire at a felony trial.
>
> We therefore conclude that the Act's "additional duties" clause permits a magistrate to supervise jury selection in a felony trial provided the parties consent.

501 U.S. at 930-31 (internal citations omitted) (emphasis added).

Hence, the Court instructs that the Act should be interpreted to require consent for an additional duty if the Act expressly requires consent for the action to which the additional duty bears relation. Here, the additional duty in question, presiding over plea proceedings, most closely bears relation to the act of conducting an evidentiary hearing. *Dees*, 125 F.3d at 265. The Act does not require consent for magistrate judges to conduct evidentiary hearings. *See* § 636(b)(2). Therefore, the Act should not be interpreted to require consent for magistrate judges to conduct plea proceedings. *See Peretz*, 501 U.S. at 930-31.

## C.

Every circuit court to consider the issue has concluded that the Act authorizes magistrate judges to conduct Rule 11 proceedings when there is consent. *United States v. Osborne*, 345 F.3d 281, 285 (4th Cir. S.C. 2003); *see also Dees*, 125 F.3d 261; *United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994); *United States v. Torres*, 258 F.3d 791, 796 (8th Cir. 2001); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003); *United States v. Ciapponi*, 77 F.3d 1247, 1251 (10th Cir. 1996); *United States v. Woodard*, 387 F.3d 1329, 1331 (11th Cir. 2004). In addition, several of these courts have indicated that magistrate judges have statutory authority to do so only when the defendant consents. *E.g.*, *Williams*, 23 F.3d at 634 ("the 'additional duties' clause of the Magistrates Act authorizes a district court judge in a felony prosecution to delegate to a magistrate judge the task of administering a Rule 11 allocution, *provided the defendant consents*."); *Reyna-Tapia*, 328 F.3d at 1119 ("The answer depends, first and foremost, on whether the parties have consented"); *Woodard*, 387 F.3d at 1332 (describing "the presence or absence of consent as the crucial factor").

To conclude that consent is necessary, these courts also relied heavily on *Peretz*. *See, e.g.*, *Williams*, 23 F.3d at 632 ("The Supreme Court's analysis in *Peretz* applies to the case before us; in fact, it controls it."). The undersigned respectfully disagrees with these courts' interpretation of *Peretz*. As noted, while the *Peretz* Court considered the authority to conduct felony *voir dire*, the issue before this court is the authority to preside over plea proceedings. *See* 501 U.S. 923.

In determining that there was statutory authority to conduct *voir dire*, the *Peretz* Court held that the act is similar to presiding over an entire civil or criminal misdemeanor trial. 501 U.S. at 930-31. The Act expressly requires consent, however, for magistrate judges to preside

6

over entire civil or criminal misdemeanor trials. § 636(b)(2). This express requirement led the Court to conclude that Congress would intend for consent to be required for magistrate judges to conduct *voir dire* as well. *Ante*, at 5. The Act does *not* expressly require consent for holding evidentiary hearings, *ante*, at 5. Hence, the lynchpin for the *Peretz* Court – that presiding over jury selection was similar to acts requiring express consent under the Act – does not exist in this case.

In addition, the circuit courts cited above considered facts distinguishable from those in this case. In those cases, the defendants had consented before or during the plea proceedings. Hence, the question presented to those courts was whether, with the defendant's express consent, the magistrate judge had statutory authority to preside over the plea proceedings. To the extent the courts went beyond that question to state that statutory authority exists *only* if the defendant consents, the courts' statements are dicta. Notably, the *Dees* court issued no comparable dictum. *See* 125 F.3d 261. As a result, despite the contrary conclusion reached by the aforementioned courts, the optimal interpretation of the Act is that magistrate judges can preside over plea proceedings, and prepare a report and recommendation on those proceedings for the district court, when the defendant neither consents nor objects.

D.

The conclusion that the best interpretation of the Act provides magistrate judges authority to preside over plea proceedings when the defendant neither consents nor objects does not dispose of the issue of statutory authorization. The court still must determine whether its interpretation of the Act engenders "grave and doubtful constitutional questions." *Gonzalez v. United States*, 128 S. Ct. 1765, 1771 (2008). If such questions are engendered, then the court

7

must employ the avoidance canon and seek an alternative reasonable interpretation of the Act .[2] *See, e.g.*, *Gomez*, 490 U.S. 858. Because this court's interpretation of the Act raises no "grave and doubtful constitutional questions," the court need not seek an alternative interpretation.

### 1. No Constitutional Questions Are Engendered

In *Peretz*, the Court indicated that the avoidance canon could potentially have applied "because of the substantial question whether a defendant has a constitutional right to demand that an Article III judge preside at every critical stage of a felony trial." 501 U.S. at 929. However, the Court concluded that the avoidance canon does not apply when a defendant waives the right at issue, stating, "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Id.* at 936.

Instructing this conclusion was the Court's maxim that "[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right." *Id.* at 936-37 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). The *Peretz* Court reasoned that whatever the characteristics of the Article III right may be, they do not elevate the importance of the right above the many significant constitutional rights that are waived by a failure to object:

> We have previously held that litigants may waive their personal right to have an Article III judge preside over a civil trial. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986). The most basic rights of criminal defendants are similarly subject to waiver. *See, e. g.*, *United States v. Gagnon*, 470 U.S. 522, 528, (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine v. United States*, 362 U.S. 610, 619 (1960) (failure to object

---

[2] It should be noted, the Fifth Circuit has not expressly employed the avoidance canon in similar cases. For example, the *Dees* court never referenced the canon. *See* 501 U.S. 923. Similarly, when the Fifth Circuit decided *Gonzalez* before the Supreme Court granted certiorari review, the court neither referenced nor employed the canon. *United States v. Gonzalez*, 483 F.3d 390 (5th Cir. 2007).

> to closing of courtroom is waiver of right to public trial); *Segurola v. United States*, 275 U.S. 106, 111 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); *United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir. 1987) (failure to object results in forfeiture of claim of unlawful postarrest delay); *United States v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir. 1984) (absence of objection is waiver of double jeopardy defense), *cert. denied sub nom. Hobson v. United States*, 472 U.S. 1017(1985); *United States v. Coleman*, 707 F.2d 374, 376 (9th Cir. 1983) (failure to object constitutes waiver of Fifth Amendment claim).

*Id.* at 936 (internal citations removed).

Here, like in *Peretz*, the defendant waived the right at issue when he raised no objection to the district court judge's absence. Consequently, this court's interpretation of the Act engenders no constitutional issues.

### 2. Any Implicated Constitutional Issues Are not "Grave and Doubtful"

Even if the court's interpretation of the Act does engender constitutional questions, the questions are not sufficiently "grave and doubtful" to require avoidance. *See Gonzalez*, 128 S. Ct. at 1771. The Supreme Court has elucidated two factors to consider when determining whether an interpretation of the Act engenders "grave and doubtful" constitutional questions. *See id.* First, courts are to consider whether magistrate judges are "capable of competent and impartial performance of the judicial tasks involved." *Id.* Second, courts are to consider whether the district judge could rule on objections in a manner that would not delay or otherwise disrupt the proceedings. *Id.*

Magistrate judges are capable of competent and impartial performance of the judicial tasks involved in plea proceedings. In *Dees*, the Fifth Circuit noted that even compared to conducting an evidentiary hearing, "the magistrate judge performed much more of a ministerial function, as [the] plea proceeding, like most others, was uncontested." 125 F.3d at 266. "An allocution is an ordinary garden variety type of ministerial function that magistrate judges

9

commonly perform on a regular basis. The catechism administered to a defendant is now a standard one, dictated in large measure by the comprehensive provisions of Rule 11 itself." *Williams*, 23 F.3d at 632. Thus, the act of presiding over plea proceedings is far less demanding than conducting *voir dire*, because "the presiding judge has significant discretion over the structure of *voir dire*." *Gonzalez*, 128 S. Ct. at 1770.

In addition, district judges have substantial opportunity to review plea proceedings conducted by magistrate judges. Unlike with *voir dire*, for example, where the magistrate judge's decisions are potentially not subject to review, "district courts review plea proceedings on a *de novo* basis, contributing to the ministerial nature of the magistrate's task." *Dees*, 125 F.3d at 268. Thus, unlike with jury selection, where "the district judge . . . is waiting in the wings" and able to rule on the issues only if necessary, *id.* (quoting *Peretz*, 501 U.S. at 938), district judges, as a matter of practice, review the plea proceedings and decide whether to accept the pleas. In this case, for example, over a month passed after the undersigned issued the report and recommendation, allowing the district court ample time to review the transcript of the proceedings. Moreover, unlike with other types of proceedings, this period for review does not delay a trial and therefore is not disruptive to the process. Thus, when magistrate judges preside over plea proceedings, district courts have a significant opportunity for meaningful, nondisruptive review.

As a result, the court's interpretation of the Act does not engender "grave and doubtful" constitutional issue and the avoidance canon does not require the court to seek an alternative interpretation of the Act.

**E.**

Additionally, it is worth noting that Underwood had numerous opportunities to object.

He could have objected during his plea proceedings. He could have objected after the proceedings, before the district court judge accepted the guilty plea. He could have objected at his sentencing hearing. Even after he was sentenced, Underwood could have objected on direct appeal, when he appealed his sentence, or in his petition for writ of certiorari to the Supreme Court. Nonetheless, Underwood never objected.

To allow a defendant in this procedural posture to invoke a constitutional right for the first time would be problematic. First, it would prevent courts and litigants from reaching a sense of finality after ostensibly disposing of cases. Second, it would create a sizeable risk that litigants would "game the system." A defendant such as Underwood could go through hearings and proceedings tight-lipped so as to determine what his sentence would be. Where, as here, the defendant was unhappy with the length of the sentence, there would be nothing to prevent him from restarting the process by invoking a right which he had long since failed to invoke. *C.f. Roell v. Withrow*, 538 U.S. 580, 590 (2003) (discussing a distinct issue, the Court endorsed the result that "checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.").

**F.**

For the foregoing reasons, the court concludes that the Act authorizes magistrate judges to preside over plea proceedings when the defendant neither consents nor objects. Accordingly, the undersigned magistrate judge had statutory authority to preside over Underwood's plea proceedings.

## II. Article III Constraints

Having concluded that the undersigned magistrate judge was statutorily authorized to

preside over Underwood's plea proceedings, it is now necessary to "determine whether the practice comports with Article III constraints on magisterial authority." *Dees*, 125 F.3d at 266. "[T]he protections of Article III fall into two categories. First, Article III confers upon defendants a personal right to have their case heard by an Article III judge." *Id.* In addition, "Article III also contains certain structural guarantees." *Id.* As discussed, "personal rights . . . [are] subject to waiver," and Underwood waived any rights he may have had by failing to object to the absence of an Article III judge at his plea proceedings. *Id.*

Consequently, the only remaining issue to resolve is "whether the delegation . . . offended the structural principles of Article III." *Id.* Article III's "structural guarantees . . . ensure respect for separation-of-powers principles." *Id.* Accordingly, structural protections may not be waived. *See id.* (citing *Peretz*, 501 U.S. at 937). The *Dees* court nonetheless concluded that Article III's structural guarantees are not implicated by a magistrate judge's presiding over plea proceedings. *Id.* As a result, the delegation in this case comported with Article III constraints.

## CONCLUSION

Because the undersigned was statutorily authorized to preside over Underwood's plea proceedings and the delegation of that duty by the district court comported with Article III constraints, it is recommended that Underwood's motion be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of August, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE